# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

KEITH WHITE,

                         Petitioner,          :     Case No. 2:20-cv-4398

     - vs -                               District Judge Michael H. Watson
                                        Magistrate Judge Michael R. Merz

WARDEN, Noble
  Correctional Institution,

                                   :

                   Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought *pro se* by Petitioner Keith White pursuant to 28 U.S.C. § 2254, is before the Court for decision on the merits. Relevant filings are the Petition (ECF No. 1), the State Court Record (ECF No. 10), the Return of Writ (ECF No. 11), and Petitioner's Reply (ECF No. 14).

The Magistrate Judge reference in the case has recently been transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 15). Final decision of the case remains with District Judge Watson.

**Litigation History**

On March 28, 2018, the Vinton County grand jury indicted Petitioner on charges of attempted murder in violation of Ohio Rev. Code § 2923.02(A)/2903.02(A), felonious assault in violation of Ohio

Rev. Code § 2903.11(A)(1), disrupting public services in violation of Ohio Rev. Code § 2909.04(A)(1), and domestic violence in violation of Ohio Rev. Code § 2919.25(A). (Indictment, State Court Record, ECF No. 10, Ex. 1).  A trial jury acquitted White of attempted murder, but convicted him on the three other charges (Verdict, State Court Record, ECF No. 10, Ex. 4).  The trial judge then sentenced White to an aggregate term of imprisonment of eight years (Sentencing Entry, State Court Record, ECF No. 10, Ex. 5).

White appealed to the Ohio Fourth District Court of Appeals which affirmed the conviction and sentence.  *State v. White,* 2019-Ohio-4562 (Ohio App. 4th District, Nov. 1, 2019), appellate jurisdiction declined 2020-Ohio-3634 (2020).  White filed his Petition in this Court August 27, 2020, pleading the following grounds for relief:

> **Ground One**: Appellant was denied his right to due process and his right to compulsory attendance under the Sixth Amendment.
>
> **Supporting Facts**: The trial court ruled appellant could not call the assistant prosecuting attorney as a witness. The APA was the sole witness who could have revealed that the alleged victim, the State's primary witness lied in her statements to detectives and that her testimony was highly inconsistent with previous statements. Thus, appellant's ability to present a full defense was hindered and his rights were violated.
>
> **Ground Two**: Appellant was denied his right to due process when his counsel was ineffective for failing to move the court for appellant to appear in clothing other than a jail uniform before the jury, a violation of the 14th Amendment.
>
> **Supporting Facts:** Trial counsel was ineffective when he failed to move the court for appellant to appear before the jury in clothing other than a jail uniform, despite a clear precedent saying this violated constitutional rights. Appellant appeared before the jury in prison attire and shackles, a clear violation of his due process right. Being unaware of the precedent created by the court is not a reasonable excuse to not raise an objection to appellant's attire.

(Petition, ECF No. 1, Page ID 5-7).

2

# Analysis

**Ground One:  Denial of Compulsory Process**

In his First Ground for Relief, White claims he was denied his right to compulsory process and to present a complete defense when the trial judge would not allow the assistant county prosecutor who was trying the case for the State to be called as a defense witness.

Respondent defends this claim on the merits, asserting that the Fourth District's decision of the claim is neither contrary to nor an unreasonable application of clearly established law as found in holdings of decisions of the United States Supreme Court (Return, ECF No. 11, PageID 513-18).  Petitioner responds by claiming the assistant prosecutor's testimony was necessary to his defense: "The entire point of the need for the Assistant Prosecutor to testify was to establish the uncredibility [sic] of the only witness to the alleged crime ... the alleged victim" (Reply, ECF No. 14, PageID 527).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The relevant portions of the Fourth District's decision on this claim are as follows:

[*P5]  Prior to Appellant's trial, the court addressed Appellant's subpoena to compel the assistant prosecutor in this case to appear and bring all notes and mental recollections from his conversation with Crystal Arthur ("Ms. Arthur"), the victim in this case, regarding her purported claim that Appellant took video/pictures of his attack.

[*P6]  Appellant argued that the assistant prosecutor's testimony would provide "*Brady* material. It's constitutional." Appellant's counsel asserted that the assistant prosecutor informed him that Ms. Arthur alleged Appellant had recorded the assault of her with his cell phone. However, Appellant claimed that the State had never produced video of the attack during discovery. Therefore, Appellant argued, the only way to determine the content of that recording was through the testimony of the assistant prosecutor.

[*P7]  In response, the State admitted that it had disclosed to Appellant's counsel that Ms. Arthur claimed there was a cell phone video of Appellant's assault of Ms. Arthur. The State further asserted that they recovered the phone and shipped it off for review, but "[n]othing materialized." And, the State argued that it was nearly certain that it informed defense counsel that the phone contained no video of the attack. Finally, the prosecutor also argued that he had disclosed this information to Appellant's counsel in April, more than six months before the trial in November, and yet Appellant did not raise this issue until trial.

[*P8]  Appellant's counsel admitted that the prosecutor had informed him that no recording existed, but he argued that "the only proof of that [no video of the attack exists] is [the assistant prosecutor's testimony]."

[*P9]  The trial court pointed out that the prosecutor had already informed Appellant that there was nothing on the phone so the court didn't think that there was a genuine dispute to which the prosecutor could testify. And, after confirming with the prosecution that Ms. Arthur was going to testify, the court also pointed out that Appellant could cross-examine the victim regarding the alleged videotaping.

[*P10]  The trial court found that because the State had previously disclosed to Appellant, albeit informally, that there was no recording on the phone, there was no *Brady* violation because there was nothing that had been withheld by the State. The court again noted that Appellant would have an opportunity to cross-examine the victim regarding any alleged videotaping of the alleged attack. The court stated: "And so then the question comes back to whether,

4

whether based on all of this taken together is a sufficient reason, uh basically, to disqualify the prosecutor from presenting the case from going forward with a trial." The court found "there is not[,]" and denied Appellant's request to call the prosecutor as a witness for the defense.

\* \* \*

## Witness Testimony

 [\*P34]  "The Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution provide an accused with a right of compulsory process to obtain a witness's testimony." *State v. Lavery*, 9th Dist. Summit No. 20591, 2001-Ohio-1638, citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S. Ct. 989, 94 L.Ed.2d 40, (1987), *Columbus v. Cooper*, 49 Ohio St.3d 42, 550 N.E.2d 937 (1990). And "[f]ew rights are more fundamental than the right of an accused to present witnesses on his behalf." *State v. Brown*, 64 Ohio St.3d 649, 652, 1992-Ohio-19, 597 N.E.2d 510 (1992), citing *Taylor v. Illinois,* 484 U.S. 400, 408, 108 S.Ct. 646, 652, 98 L.Ed.2d 798 (1988).

 [\*P35]  "The right to compulsory process, however, is not unlimited." *State v. Denis*, 117 Ohio App.3d 442, 446, 690 N.E.2d 955 (1997), State v. Collins, No. 48159, 1984 WL 6341, at \*3 (Ohio Ct. App. Dec. 6, 1984), *State v. Smiddy,* 2nd Dist. Stark No. 06CA0028, 2007-Ohio-1342, ¶ 25. "The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right." *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S.Ct. 646, 654, 98 L.Ed.2d 798 (1988). "The trial process would be in shambles if either party had an absolute right to control the time and content of his witnesses' testimony." Id. at 411. "The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence. *Id.* Therefore, "a defendant's right to present his own witnesses to establish a defense is prescribed by the rules of evidence." *State v. Denis*, 117 Ohio App.3d at 442, 446, 690 N.E.2d 955 (6th Dist.). "A trial court has broad discretion in the admission or exclusion of evidence and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to defendant." *State v. Blair,* 2016-Ohio-2872, 63 N.E.3d 798, ¶ 67, quoting *State v. Richardson,* 4th Dist. Scioto No. 14CA3671, 2015-Ohio-4708, ¶ 62.

[*P36] "A party may not predicate error on the exclusion of evidence during the examination in chief unless" (1) the party proffers the expected testimony or the proffer is apparent from the context of the questions asked, and (2) the exclusion of such evidence must affect a substantial right of the party. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 113, citing *State v. Gilmore*, 28 Ohio St.3d 190, 28 Ohio B. 278, 503 N.E.2d 147 (1986), syllabus. If the excluded testimony does not have an impact on the jury's verdict, it has not prejudiced the movant's substantial rights. *State v. Blair*, 2nd Dist. Montgomery No. 26256, 2015-Ohio-3604, ¶ 14-15.

[*P37] Finally, the Supreme Court of Ohio has "recognize[d] that a prosecuting attorney should avoid being a witness in a criminal prosecution," unless "it is a complex proceeding where substitution of counsel is impractical, * * * the attorney so testifying is not engaged in the active trial of the cause and it is the only testimony available * * *." (Emphasis added.) *State v. Coleman*, 45 Ohio St.3d 298, 302, 544 N.E.2d 622 (1989).

[*P38] During cross examination, Appellant's counsel asked Ms. Arthur: "Okay. And do you, you indicated you recall alleging that [Appellant] held you down, beat you and videoed the incident while it was going on?" Ms. Arthur responded: "He said he was. I wasn't on the other side of the phone. All I know is he had it in front of me while he was hitting me." (Emphasis added.)

[*P39] Contrary to Appellant's assertion, Ms. Arthur did not testify that a video of the attack existed. Rather, she alleged that Appellant told her that he was videoing the attack. In fact, her statement - "I wasn't on the other side of the phone" - indicates that Ms. Arthur was uncertain whether Appellant recorded the attack. Therefore, we find that the assistant prosecutor's proffered testimony - that no video of the attack existed - would not have impeached Ms. Arthur's testimony, or even undermined its credibility, which was the basis of Appellant's argument on appeal. Consequently, we find the assistant prosecutor's excluded testimony would not have impacted the jury's verdict, i.e. it did not affect Appellant's substantial rights. See *Blair*, 2nd Dist. Montgomery No. 26256, 2015-Ohio-3604, ¶ 14-15. Moreover, because Ms. Arthur provided the only testimony necessary to answer Appellant's question regarding the recording of the attack, *Coleman* also supported our conclusion that the assistant prosecutor should not have been called as a witness in this case.

[*P40] Accordingly, the trial court did not abuse its discretion in precluding Appellant from calling the assistant prosecutor as a

6

witness is his case. We overrule Appellant's first assignment of
error.

*State v. White, supra*.

As the Fourth District found, the Assistant County Prosecutor who was handling the case,

William L. Archer, Jr., had advised defense counsel in April 2018 that the cell phone recovered

from White did not have a video of him beating the victim, Crystal Arthur. Yet defense counsel

waited until two days before trial in November 2018 to subpoena Mr. Archer. Defense counsel

claimed that the testimony he sought from Archer – that no video of the attack existed on

White's phone – was *Brady* material, adverting to *Brady v. Maryland*, 373 U.S. 83 (1963).

*Brady* of course requires the disclosure by the State to a defendant of any material exculpatory

evidence, including evidence which is impeaching of testimony by State's witnesses. See

*Strickler v. Greene*, 527 U.S. 263, 280-82 (1999). There is no claim made here that the

prosecutor violated *Brady*; prompt pre-trial disclosure of the lack of a video is admitted.

Instead, White appears to claim that a defendant has the right to prove the content of

disclosed *Brady* material by calling as a witness the prosecutor who made the disclosure. On

appeal, represented by new counsel, White claimed that having Archer testify as intended

would not violate Ohio R. Prof. Conduct 3.7 because it was of uncontested facts (Appellant's

Brief, State Court Record, ECF No. 10, Ex. 8, PageID 88-89). The Fourth District disclaimed

any authority to opinion on the ethics question. *State v. White, supra*, at ¶¶ 32-33. But neither

Archer nor the trial judge could have known in advance that the Fourth District would take this

position. A skeptical trial judge, such as the undersigned, might suspect defense counsel of

waiting until trial to raise the issue in the hope that Archer, having been called as a witness,

would be disqualified from prosecuting the case, forcing a continuance or presentation of the

State's case by an unprepared assistant county prosecutor. If this tactic were allowed, defense

counsel in other cases would have a strong temptation to try it in many cases, because prosecutors would ordinarily know the content of *Brady* material they had disclosed and thus would be competent witnesses on that matter.

Fortunately, the Court need not reach that question because the absence of a video would not have impeached Ms. Arthur's testimony. She freely admitted she did not know whether White video-recorded his beating of her because she was not on his side of the phone. She could only testify that he said he was recording the beating. Of course the prosecutor searched for the film – it would have been invaluable proof of White's guilt if it existed. But when he found nothing he told defense counsel that. Thus the Fourth District's decision that Archer's testimony to the lack of a video would not have undermined Ms. Arthur's credibility is a reasonable determination of the facts based on the evidence presented.

As Supreme Court case authority for his position, White relies on *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987). While the *Ritchie* Court does recite general language about compulsory process, the holding of the case is that defense counsel did not have the right to examine a child abuse file made confidential by Pennsylvania law. Rather it held the trial judge should examine the file and provide any *Brady* material to the defense.

*Taylor v. Illinois*, 484 U.S. 400 (1988), also relied on by White, is much more in point, but supports the Fourth District's decision. Defense counsel sought to add a surprise witness to his witness list on the second day of trial, but the trial judge excluded the witness. There, as here, defendant claimed an absolute right under the Compulsory Process Clause to present the witness. The Supreme Court disagreed, holding that:

> A trial judge may certainly insist on an explanation for a party's
> failure to comply with a request to identify his or her witnesses in
> advance of trial. If that explanation reveals that the omission was
> willful and motivated by a desire to obtain a tactical advantage that

> would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

While there is no indication on the record that defense counsel violated the Ohio criminal discovery rules in this case, subpoena two days before trial of opposing counsel to testify appears to be tactically motivated. In any event, the Supreme Court did not hold the Compulsory Process Clause right was absolute.

White's Reply also brings out the tentativeness of Archer's exclusion. Defense counsel suggested he might need to call Archer in rebuttal if Ms. Arthur lied about the video recording. In response, the trial judge said he would see "if we get there." (Reply, ECF No. 14, PageID 530). White argues the trial judge was required to resolve the issue pretrial. *Id.* But the tentative or preliminary ruling preserved the possibility of calling Attorney Archer if Ms. Arthur lied about the video. She did not and thus any need to call Archer to rebut the existence of the video disappeared[1].

White emphasizes the discrepancy between Arthur's earlier statement to the prosecutor that there was a video and her later testimony at trial that she had just seen White holding the camera and saying he was filming the beating (Reply, ECF No. 14, PageID 531). White notes essentially how stupid it would be for someone in the attacker's position to film what he was doing. *Id.* Agreed. But it might well fit the mindset of a person engaged in terrorizing a domestic partner to tell her he was filming his beating of her – so he could remind her, should the occasion arise, of how helpless she was at this hands. Of course Petitioner was perfectly free to take the stand and deny everything – the beating, the filming, or the lie about filming. But he chose not to do so. He can argue now that she was lying, but it is too late for him to testify to that effect.

---

[1] Incidentally, White claims Arthur was the "only witness to the alleged crime." (Reply, ECF No. 14, PageID 527). Not so. White was also present, but chose not to testify.

9

The right to offer witnesses and to compel their attendance if necessary is a fundamental element of due process of law.  *Washington v. Texas*, 388 U.S. 14 (1967).  But the right is not absolute and the trial court's exclusion of the assistant prosecuting attorney as a defense witness was not an unreasonable application of Supreme Court precedent interpreting the right.

**Ground Two:  Prison Garb**

In his Second Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his attorney did not object to his appearing at trial in a jail uniform and shackles.

Respondent defends this claim on the merits, arguing that White was not compelled to appear in a jail uniform and has not shown any prejudice from counsel's failure to object.

The Fourth District Court of Appeals considered this claim on the merits and ruled as follows:

> [*P41]  In his second assignment of error, Appellant alleges that he was denied his right to due process when his trial attorney provided ineffective assistance of counsel by failing to move the trial court for him to appear before the jury in clothing other than a jail uniform.
>
> [*P42]  Prior to voir dire and out of jury's presence, the prosecutor brought to the attention of the court and Appellant that the State had: concerns that the defendant is not in street clothes as he is in a jumper. Um I don't think any of us here want to go forward and go through a trial of this length and magnitude to have the Court of Appeals say, well, but he was — he was in his jumper instead of street clothes. I don't know how the court wants to address that, but I do want to note it on the record that I have some concerns about — about going forward with that.
>
> In response, Appellant's counsel stated: "I have nothing to add to that judge. I am not familiar with the case law to which [the

prosecutor] is referring." The judge the stated: "All right. Very well then. Anything further?" Both attorneys responded in the negative, and proceedings continued.

[*P43] Appellant argues that his trial counsel was ineffective for failing to request the trial court for an opportunity to appear before the jury in clothing other than his jail uniform. Appellant argues the United States Supreme Court held that appearing in a jail uniform before a jury is "inherently prejudicial" in *Estelle v. Williams,* 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976). Because Appellant's counsel purportedly was not familiar with *Estelle* or similar case law, and did not request that Appellant be dressed in clothing other than his jail uniform, Appellant argues that his performance was below an objective level of reasonable representation. He also argues that he was "directly prejudiced" by wearing his jail uniform before the jury.

[*P44] The State argues that while *Estelle* held that wearing prison attire can be prejudicial, it did not establish a bright line test to make that determination when wearing prison attire was reversible error. This, the State argues, is because some defendants may prefer to wear prison clothing to elicit sympathy. Therefore, a defendant must show that he or she was compelled to wear prison clothing as a perquisite [sic] to finding prejudice. The State argues that Appellant failed to make the showing that his counsel was ineffective.

[*P45] The State also highlights the fact that Appellant's counsel was made aware that Appellant was wearing prison clothing, and because he did not object, Appellant waived any right to claim that it was error. The State further argues that Appellant's assignment of error should be rejected under the invited error doctrine.

[*P46] "To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial." *State v. Barnhart,* 4th Dist. Meigs Nos. 18CA8 and 18CA15, 2019-Ohio-1184, ¶ 64, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). "Failure to satisfy either part of the test is fatal to the claim." *State v. Gillian,* 4th Dist. Gallia No. 16CA11, 2018-Ohio-4983, ¶ 12, citing *Strickland* at 697.

[*P47] The United States Supreme Court has addressed the issue of "whether an accused who is compelled to wear identifiable prison clothing at his trial by a jury is denied due process or equal

protection of the laws." *Estelle v. Williams*, 425 U.S. 501, 502, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976).

 [*P48]  Estelle found that in large part courts have "determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversarial system." (Citations omitted.) *Id*. at 504. However, *Estelle* also recognized that courts have declined to adopt a per se rule invalidating all convictions where a defendant had appeared before the jury in prison clothing. *Id*. at 508. The court stated that:

 [**23]  [t]he reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury. *Id*. at 507-508, citing *Anderson v. Watt,* 475 F.2d 881, 882 (10th Cir. 1973); *Watt v. Page*, 452 F.2d 1174, 1176 (10 Cir. 1972); Cf. *Garcia v. Beto*, 452 F.2d 655, 656 (5th Cir. 1971). Therefore, the court held that:

> although the State cannot, consistently within the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. (Emphasis added.) *Estelle*, 425 U.S. 501, 512-13, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976).

 [*P49]  In *State v. Judy*, 4th Dist. Ross No. 08CA3013, 2008-Ohio-5551, ¶ 37, the Court addressed whether Appellant's trial counsel's failure to object to the fact that his client wore prison clothing at trial constituted ineffective assistance of counsel. The appellant in *Judy* appeared at trial dressed in his prison clothes. *Id.* at ¶ 4. But during voir dire, Appellant's counsel asked the jury if anyone would treat Appellant unfairly because his of his prison clothes. *Id*. "[T]here was no indication from the jury that there would be a problem." *Id*.

 [*P50]  On direct appeal, Appellant alleged that his "counsel was ineffective for not dressing her appropriately for trial." *Id.* at ¶ 32. After reviewing the holding in *Estelle*, the court in Judy concluded that "[a]lthough other attorneys may have suggested or done otherwise, we decline to second-guess trial counsel's decision to

allow his client to stand trial in prison garb because this decision has been acknowledged to be a strategic one." *Id.* at ¶ 42, citing *Estelle, supra*, *United States* v. *Wells*, 9th Cir. No. 97-35656, 1998 U.S. App. LEXIS 26240, 1998 WL 741173 (Oct. 13, 1998), *State v. Singer,* 4th Dist. Ross No. 99CA2845, 2000 Ohio App. LEXIS 3518, 2000 WL 1093577, (July 31, 2000), *State v. Edgington,* 4th Dist. Ross No. 95CA2151, 1996 Ohio App. LEXIS 5697, 1996 WL 720860 (Dec. 11, 1996). Accordingly, the court rejected Appellant's ineffective assistance of counsel argument.

[*P51] In addition, overwhelming evidence supporting an appellant's convictions may negate any prejudice for wearing prison clothing at trial. See *State v. Godbolt,* 5th Dist. Licking No. 2003CA00034, 2004-Ohio-317, ¶ 21.

[*P52] In this case, unlike in *Judy*, Appellant's counsel was apparently unaware that under the law a defendant could not be compelled to wear prison clothes to trial. However, the prosecutor put Appellant on notice that a defendant had the option to wear street clothes at trial rather than prison clothing, even noting that he did not want Appellant's prison clothing to become an issue on appeal. Nevertheless, Appellant never objected to his prison attire or otherwise expressed a desire to wear street clothes at trial. As *Estelle* stated: "the failure to make an objection to the court as to being tried in [prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."

[*P53] Finally, there is overwhelming evidence supporting Appellant's convictions. Although there are some inconsistencies in the testimony of some of the witnesses, the evidence and testimony support that Appellant physically assaulted Ms. Arthur and caused her significant injury. Accordingly, we find that Appellant cannot show that he was prejudiced by wearing his prison clothing at trial. See *Godbolt*.

[*P54] Absent deficient representation and a lack of prejudice, we find that Appellant's counsel was not ineffective. Accordingly, we overrule Appellant's second assignment of error.

*State v. White, supra*.

White includes in his Second Ground for Relief a claim that he appeared before the jury and was tried in shackles. Such a claim presents entirely different issues from the claim about

13

appearing in a jail uniform. See *Deck v. Missouri*, 544 U.S. 622 (2005). No claim about shackles was presented to the Fourth District and White offers no record reference to show that he was indeed shackled. Thus any issue about shackling is either non-existent or defaulted.

There is likewise no claim that White was compelled to appear in jail garb. The prosecutor raised the issue and White's counsel waived any objection. Rather the question is whether he provided ineffective assistance of trial counsel in waiving the objection.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption

> that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

The Fourth District clearly recognized that *Strickland* provided the relevant legal standard. It noted that failure to object to prison garb can be a strategic choice on the part of defense counsel

15

in an attempt to gain sympathy for a defendant. White claims this was not the case here because his attorney claimed not to be familiar with the relevant case law. Whether or not counsel could cite cases on the point, he was clearly made aware by the prosecutor that he had a choice and he made that choice to allow White to appear in jail clothes[2]. Because *Estelle* holds that can be a valid strategic choice, the Fourth District was not prepared to second guess it. Under *Harrington*, this Court must be even less willing to do so.

Beyond deficient performance, a prisoner who claims ineffective assistance of trial counsel must also show prejudice. The Fourth District found no prejudice because of what it characterized as the overwhelming evidence of guilt and the jury's acquittal on the most serious charge, attempted murder. White makes no response on the second *Strickland* prong, but the Magistrate Judge concurs with the Fourth District that the evidence of guilt was overwhelming. The victim's physical injuries were serious and corroborated by multiple medical personnel who saw her immediately after the incident. This is not a "she said, he said case." The victim's testimony and corroboration were met with complete silence by the defense, either the Petitioner himself or any forensic evidence to undermine the State's case. Thus even if it was deficient performance to fail to object to the jail uniform, White has not shown he suffered any prejudice.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should

---

[2] Although the Fourth District did not take up the question, counsel's choice in the light of the prosecutor's comment about not creating appellate issues makes this appear very much like invited error.

not be permitted to proceed *in forma pauperis*.

March 11, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

## NOTICE REGARDING RECORD CITATIONS#

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**

17